IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville April 27, 2021

## MARIO BOWLES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 14-00579       J. Robert Carter, Jr., Judge
_____

### No. W2020-00070-CCA-R3-PC
_____

The pro se Petitioner, Mario Bowles, appeals the denial of his petition for post-conviction relief, claiming that he was denied the effective assistance of counsel, that the post-conviction court judge was prejudiced against him, that the State engaged in prosecutorial misconduct, and that the trial and post-conviction courts lacked jurisdiction over the case. Based upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

Mario Bowles, pro se, Nashville, Tennessee.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

In February 2014, the Shelby County Grand Jury indicted the Petitioner for two counts of aggravated rape based on alternative theories and one count of aggravated kidnapping. The Petitioner went to trial in December 2015, and the jury convicted him as charged. After merging the aggravated rape convictions, the trial court sentenced him to an effective term of twenty-three years at one hundred percent in the Tennessee Department of Correction and ordered that he serve the sentence consecutive to a sentence in an unrelated case. The Petitioner's convictions were affirmed by this court on direct appeal.

State v. Mario Bowles, No. 2016-00496-CCA-R3-CD, 2017 WL 3492100, at \*1 (Tenn. Crim. App. at Jackson, Aug. 15, 2017), no perm. app. filed.

The Petitioner's convictions resulted from his raping and confining a case manager from Southeast Mental Health Center in Memphis. On October 2, 2013, the victim went to the home of the Petitioner, who was one of her clients, to meet with him as part of her job duties. Id. The Petitioner admitted the victim into his home, locked the door behind her, held a knife to her neck, and ordered her to walk into a bedroom, where he forced her to disrobe and raped her. Id. During the rape, the victim struggled with the Petitioner for the knife and was cut on her hand and thigh. Id. After the rape, the Petitioner forced the victim to wash herself repeatedly and to pray with him. Id. He eventually allowed the victim to leave, and the victim called the police from her vehicle as she was driving away from the scene. Id. at \*2. The Petitioner fled to the State of New York but was returned to Shelby County on September 9, 2014, after he was picked up in New York and waived extradition to Shelby County. Id.

The Petitioner filed a timely pro se petition for post-conviction relief in which he raised a claim of ineffective assistance of counsel. After retaining post-conviction counsel, the Petitioner filed an amended petition in which he alleged that trial counsel was ineffective for failing to maintain adequate communication with him, for failing to withdraw from representation upon their complete breakdown in communication, for failing to investigate properly or convey to the jury the state of the Petitioner's mental health, and for failing to fully explain to the Petitioner the risk of going to trial.

Before the evidentiary hearing, the Petitioner's retained counsel accepted employment with the district attorney's office and was allowed to withdraw from representation. The Petitioner was eventually appointed new post-conviction counsel after the court first gave him several opportunities to retain counsel of his own choosing. The Petitioner, however, was unhappy with appointed counsel, refused to work with him, and filed a complaint with the Board of Professional Responsibility against counsel.

At the beginning of the evidentiary hearing, the Petitioner again expressed his dissatisfaction with appointed counsel and repeatedly demanded that the post-conviction court appoint new counsel. The post-conviction court denied the request, finding that the Petitioner had not cooperated with any of his attorneys, that he would not cooperate with a new attorney, and that he was attempting to obstruct the proceedings. Ultimately, despite the post-conviction court's warnings about the dangers of representing himself, the Petitioner waived counsel and chose to proceed pro se, with his former post-conviction counsel appointed to serve as elbow counsel.

The Petitioner's examination of trial counsel was long and arduous due to the Petitioner's repeated attempts to argue with both trial counsel and the post-conviction court and his attempts to introduce into evidence documents that trial counsel did not recognize, including a document purporting to show that the Petitioner was arrested for rape on August 18, 2011, and released "without charge." Trial counsel, a public defender who had been licensed since 1991, recalled that when he first met with the Petitioner, the Petitioner informed him that his entire case already had been dismissed. Trial counsel later learned that the Petitioner had been taken to general sessions court after his arrest but that an indictment had been returned before the Petitioner's arrest. As a result, the general sessions case was dismissed. Trial counsel requested that the criminal court send the case back to general sessions court for a preliminary hearing, but the criminal court denied the request. When trial counsel spoke with the Petitioner about the situation, the Petitioner became very angry, insisting that the case had been dismissed in its entirety. From that point forward, trial counsel found that communicating with the Petitioner was extremely difficult.

Trial counsel testified that he provided the Petitioner with discovery on multiple occasions, beginning over a year before trial. Trial counsel explained that he provided the Petitioner with multiple copies of discovery out of an abundance of caution because the Petitioner either refused to meet with him or refused to speak with him during the multiple times he went to the jail to talk with the Petitioner. Trial counsel acknowledged that the Petitioner asked him on a number of occasions why the Petitioner was in jail. The Petitioner also yelled at him on numerous occasions.

Trial counsel testified that with the assistance of an investigator, he investigated the case to the extent possible despite the Petitioner's refusal to cooperate. Trial counsel was not aware of any exculpatory evidence, but he unsuccessfully attempted to subpoena the Petitioner's mother. Trial counsel acknowledged that he did not present any defense proof. He pointed out, however, that he attempted to impeach each of the State's witnesses, and he expressed his belief that he represented the Petitioner to the best of his abilities under difficult circumstances. He knew before trial that the Petitioner had filed both a motion to have him relieved of representation and a complaint against him with the Board of Professional Responsibility.

Trial counsel testified that he requested the standard mental health evaluation for the Petitioner and that he sought additional funds in an attempt to obtain a second independent evaluation. When asked whether he ever provided the Petitioner with documentation to show that the Petitioner was legally in jail, trial counsel recalled that the Petitioner had been extremely upset and confused about his having been indicted before he was even arrested. Trial counsel could not recall if he ever showed the Petitioner documents from the arraignment.

At that point in the hearing, the post-conviction court interjected to recite the procedural history of the case.[1] The post-conviction court noted that before the Petitioner was arrested on the original general sessions warrant, the grand jury returned an indictment and another warrant was issued. The Petitioner was arrested and taken to general sessions court, where the original warrant and charges were dismissed because an indictment had been returned. The Petitioner acknowledged to the post-conviction court that he thought the dismissal of the case in general sessions court barred his prosecution in criminal court. Trial counsel testified that he attempted several times to explain the process to the Petitioner. He indicated that the Petitioner remained intransigent and argumentative, testifying that the Petitioner kept going "round and round" with him on the subject.

On cross-examination, trial counsel acknowledged that the case was not factually complicated but that the Petitioner made the case difficult by refusing to cooperate. He agreed that he sent letters to the Petitioner in an attempt to keep the Petitioner informed about the case after the Petitioner stopped talking with him. Trial counsel said the Petitioner never provided him with any information useful to the defense but instead fixated on the belief that the Petitioner had been wrongly indicted and tried in criminal court because the charges had been dismissed in general sessions court. Trial counsel attempted to subpoena the Petitioner's mother as a witness, but she informed him that she was unable to come to the trial.

Trial counsel testified that he sought the assistance of Debbie Nichols, a mental health professional, in an attempt to better communicate with the Petitioner. However, the Petitioner was not responsive when Ms. Nichols accompanied trial counsel on a visit to the Petitioner. Trial counsel agreed that he advised the trial court about the breakdown in communication with the Petitioner and that he attempted to have the Petitioner undergo a second mental health examination by a different physician who he thought might have better success communicating with the Petitioner. Trial counsel testified that he would have investigated any witnesses the Petitioner suggested but that the Petitioner did not provide him with any names. Trial counsel heard nothing in the prosecutor's closing argument that required objection.

At the conclusion of the first day of the evidentiary hearing, the Petitioner became very angry because the post-conviction court prevented him from questioning trial counsel about new topics on redirect-examination. The Petitioner accused the post-conviction court of having a personal interest in the case, complained that the court was being unfair in its rulings, and submitted a "Petition for Recusal of Judge," which he apparently had prepared before the hearing. The Petitioner alleged in the petition that the judge demonstrably favored the prosecution because the judge had, among other things, signed the capias, failed to dismiss the indictment, ruled that the State was not required to file a response to

---

[1] The post-conviction court also presided over the Petitioner's trial.

- 4 -

the amended petition for post-conviction relief, denied the Petitioner's motions to remove trial and post-conviction counsel, and ruled unfairly against the Petitioner throughout the proceedings.

The next day, the post-conviction court entered an order denying the petition for recusal. The court stated that it had no bias against the Petitioner and found that the Petitioner, who equated unfavorable rulings as bias against him, had filed the motion for the purpose of delaying the hearing.

The hearing continued with the Petitioner's rambling testimony about his offenses in 2011 and 2013. He reiterated his many complaints about trial counsel and repeatedly expressed his belief that his indictment and trial were invalid because the charges had been dismissed in general sessions court. The Petitioner complained that trial counsel failed to investigate the case, failed to listen to him, and failed to file necessary motions, which had necessitated the Petitioner's filing of pro se motions. The Petitioner claimed that trial counsel failed to investigate or introduce the lack of DNA evidence linking the Petitioner to the crimes, failed to discredit the victim's account of having been raped and kidnapped, failed to challenge the Petitioner's mother's consent to search her home, failed to file a motion for summary judgment, failed to ensure that the Petitioner received a fair and complete competency evaluation, and failed to contest the testimony of the medical expert at the competency hearing that the Petitioner was on several different drugs and engaged in drug-seeking behavior. The Petitioner said he informed trial counsel that he never received a competency evaluation and that he had been forced to leave the mental institution early after he was unfairly labeled as disruptive. The Petitioner said that he told trial counsel to investigate the grievance he had filed with the facility but that trial counsel failed to do so.

Upon being questioned by the post-conviction court, the Petitioner denied that he refused to meet with trial counsel, stating that he met with trial counsel every time counsel came to the jail. All trial counsel did, though, was interrogate the Petitioner about the facts of the case, which the Petitioner did not like. The Petitioner thought trial counsel should have investigated the validity of the indictment instead.

On cross-examination, the Petitioner denied that he had refused to get on the bus to attend a previous court setting for the post-conviction case. He also denied that he had stopped communicating with his trial counsel, with his post-conviction counsel, and with a physician at the Midtown Mental Health Institute.

Subsequently, the post-conviction court entered an order denying the petition for post-conviction relief on the basis that the Petitioner failed to show that trial counsel was deficient in his performance under the difficult circumstances in which counsel was forced

- 5 -

to defend the case. The court found that the Petitioner had an obsessive belief that the "non-merits dismissal" of the charges in general sessions court precluded his trial for the offenses and that he refused to cooperate with counsel because counsel did not agree with his erroneous position. The court further found that the Petitioner also was erroneously convinced that his release after his arrest in an earlier unrelated case was in some way dispositive of the 2013 rape and kidnapping case. Finally, the court observed that the Petitioner had a history of refusing to cooperate in his own defense when faced with facts with which he did not agree.

The post-conviction court appointed the Petitioner's post-conviction counsel to represent the Petitioner on appeal. The Petitioner subsequently filed a motion in this court requesting the removal of post-conviction counsel. Following remand to the post-conviction court for a hearing to determine if the Petitioner knowingly waived his right to counsel on appeal, post-conviction counsel was relieved from representation. The Petitioner was allowed to proceed with the appeal pro se.

## II. Analysis

As best as we can understand his arguments, the Petitioner contends as follows on appeal: he was denied the effective assistance of counsel due to counsel's failure to communicate with him effectively and to investigate his case adequately, especially the invalidity of the indictment; the State engaged in prosecutorial misconduct by, among other things, not reading the indictment at the arraignment and misleading the jury during closing arguments about its duty to find him guilty beyond a reasonable doubt; the judge who presided over the trial and the post-conviction hearing should have granted the Petitioner's motions to recuse because the judge's actions demonstrated his personal interest in the case and his prejudice against the Petitioner; and the trial and post-conviction courts lacked jurisdiction because the case was fully dismissed in general sessions court and/or the indictment was related to a different, earlier case in which the Petitioner had been released without charge. The State responds that the Petitioner failed to prove his allegations of ineffective assistance of counsel and waived his other claims due to his failure to raise them in the appropriate time and manner and due to his failure to provide an adequate record for review.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their

testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The record in this case fully supports the post-conviction court's findings of fact and conclusions of law. The Petitioner's testimony, examination of trial counsel, and argument at the evidentiary hearing made it clear that the Petitioner was convinced that his indictment and prosecution were invalid because (1) the charges were nolle prosequied in general sessions court and (2) the indictment was somehow related to his 2011 arrest rather than the events of 2013. Although the Petitioner disagreed that he stopped meeting with trial counsel, he indicated that he was dissatisfied and uncooperative with counsel because of counsel's focus on the details of the alleged crimes rather than the validity of the indictment. The Petitioner also testified that he felt compelled to take over his own defense by researching the law and filing his own pro se motions.

Trial counsel's testimony, which was implicitly accredited by the post-conviction court, established that the Petitioner stopped communicating in any meaningful way with trial counsel, either yelling at counsel when they met or refusing to meet with him at all. According to trial counsel, the Petitioner did not provide any useful information for his defense and instead remained fixated on the idea that his indictment was invalid despite counsel's repeated efforts to explain the process to him. In trial counsel's efforts to maintain communication, he not only sent letters to the Petitioner and provided multiple copies of discovery to the Petitioner but also enlisted the assistance of a mental health professional in hopes that she would be able to facilitate a better rapport with the Petitioner. Given what was obviously a difficult client, trial counsel made the best effort he could to mount an effective defense. We, therefore, conclude that the Petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of counsel.

We further conclude that the Petitioner's additional claims, which relate to prosecutorial misconduct, bias of the judge at trial, and lack of jurisdiction, are waived. As the State points out, these claims could and should have been raised earlier. See Tenn. R. App. P. 36(a). The Petitioner did not raise these various claims in his direct appeal or in his original or amended petitions for post-conviction relief and addressed them only tangentially during the evidentiary hearing as part of his argument that trial counsel provided ineffective assistance. Although the Petitioner refers several times to his "Extraordinary Amended Petition for Post-Conviction Relief," no such document is in the record. Moreover, the document was presumably filed pro se while the Petitioner was represented by counsel and, as such, was properly not considered by the post-conviction court. See State v. Davis, 141 S.W.3d 600, 615-16, n.12 (Tenn. 2004).

We also find no merit in the Petitioner's contention that the judge erred by not disqualifying himself from the post-conviction proceedings. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R.10, R.J.C. 2.11(A). Whether the judge erred by denying the motion to recuse himself is a question of law, which we review de novo. Cook v. State, 606 S.W.3d 247, 253 (Tenn. 2020) (citing Tenn. Sup. Ct. R. 10B, § 2.01).

There was nothing in the proceedings from which the judge's impartiality reasonably could be questioned. It was patently clear throughout the evidentiary hearing that the Petitioner was simply unhappy and angry at the judge's attempts to have the Petitioner comply with at least some of the Rules of Evidence, to stop badgering and arguing with trial counsel, and to move on to another topic after repetitive questioning on the same subject. We note that the post-conviction court was courteous to the Petitioner throughout the hearing and allowed him far more latitude than would be afforded a licensed attorney.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

 

_____
NORMA MCGEE OGLE, JUDGE